UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEX MONETTE,

        Petitioner,

    v.

NICK DAWSON, Warden,

        Respondent.

_____/

No. C 08-2880 PJH

**ORDER GRANTING MOTION TO DISMISS**

On October 9, 2007, Alex Monette, a state prisoner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the United States District Court for the Eastern District of California. On June 6, 2008, the case was transferred to this district because the conviction challenged was entered in the Monterey County Superior Court, and on June 9, 2008, the case was assigned to the undersigned judge. Currently before the court is the state's November 17, 2008 motion to dismiss Monette's petition on the grounds that it is untimely. For the reasons that follow, the court GRANTS the state's motion.

**BACKGROUND**

In March 1990, Monette was convicted of second degree murder, along with a weapons use enhancement, in the Los Angeles County Superior Court. He was subsequently sentenced to fifteen years to life.

While Monette was incarcerated at the Correctional Training Facility at Soledad, California, prison officials conducted an investigation into a marijuana trafficking scheme by which drugs were allegedly brought in through the prison's medical department. In May

2004, Monette's cell was searched as part of the investigation, and officials discovered an excess of 10.96 grams of marijuana in a cap hanging near Monette's bunk. Monette was charged with, and after a hearing by a California Department of Corrections ("CDC") officer, convicted of a CDC-115 serious rule violation.

Monette was also charged with one count of being in possession of a controlled substance in prison, and entered a no contest plea in the Monterey County Superior Court. On June 8, 2005, the court sentenced Monette to two years in state prison, to run consecutive to his existing term. Monette did not file a direct appeal.

Subsequently, on March 8, 2006, the parole board denied Monette parole, noting that its decision was based primarily on the cruel nature of his commitment offense, and Monette's failure to "come to grips" with what happened and "come forward and admit it." Petition Exh. D, at 128-29. It asserted that Monette's "murky" and "conflicting" stories regarding the murder "makes it difficult to say this guy knows what he did" and is "less apt to make the same mistake again." *Id.* at 130. Additionally, the board noted that Monette received two serious CDC's in 2004, one of which was possession of a controlled substance. *Id.*

On August 18, 2006, Monette filed a petition for writ of habeas corpus with the Monterey County Superior Court, which the court denied on October 23, 2006. In denying his petition, the superior court noted that Monette had not exhausted his administrative remedies and thus could not appeal the CDC's rule violation conviction. However, the court denied on the merits petitioner's claims related to his conviction in the Monterey County Superior Court for being in possession of a controlled substance in prison.

On December 8, 2006, Monette then filed a habeas petition with the California Court of Appeal, which the court denied on January 4, 2007. On January 23, 2007, Monette filed a habeas petition with the California Supreme Court, which it similarly denied on June 27, 2007. Monette subsequently filed the instant petition for federal habeas relief with the United States District Court for the Eastern District of California on October 9, 2007.

2

Monette raises two claims for federal habeas relief: (1) that he received ineffective assistance of counsel and would not have entered into his plea agreement had he received competent advice; and (2) that his plea agreement violated his right to due process. Monette essentially argues that his appointed attorney, who represented him on the charge of possession of a controlled substance in prison in superior court, was not familiar with parole board procedures and practices, and rendered incompetent advice in allowing Monette to plead no contest to the drug charge when there were no benefits to doing so. He also argues that the plea bargain violated his due process rights because it was in violation of California contract law.[1]

In the only written, reasoned decision on the issues, the California Superior Court, in denying Monette's habeas petition, rejected both claims. First, it essentially found that Monette's counsel's performance was not deficient because by virtue of the plea, Monette "was able to benefit from receiving the lower term of 2 years on the charge of possession," obtained a dismissal from the prosecution as to one of the charges, and also "avoid[ed] the charged strike from his sentence." Petition Exh. J. Additionally, the court held that the fact that the resulting conviction may be considered by the parole board in determining Monette's suitability for parole did not render counsel's advice constitutionally deficient. Finally, it held that given the "overwhelming evidence" against Monette that he was guilty of possession of marijuana, including investigative reports, positive urinalysis, and forensic results on the three bindles of marijuana, Monette could not demonstrate prejudice.

As for the plea bargain issue, the state court held that Monette had procedurally defaulted that claim. Specifically, it held that Monette's "various and unique arguments concerning the enforceability of the plea bargain" were "a matter which should have been, but apparently [were] not, raised on direct appeal." It noted that habeas corpus was not a substitute for a direct appeal, and that Monette had not shown that the claim satisfied an

---

[1] The court notes that as argued, this issue essentially asserts a violation of state law, which is not cognizable in a federal habeas case.

3

exception that allowed him to bring the claims in a habeas petition.

## DISCUSSION

### A.  Legal Standards

AEDPA requires that an application for a writ of habeas corpus be made during the one-year statute of limitations period. 28 U.S.C. § 2244(d)(1). Section 2241(d)(1) provides in pertinent part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

### B.  Parties' Arguments

The state asserts that Monette's judgment became final and AEDPA's statute of limitations began running on August 7, 2005, sixty days after Monette was sentenced on June 8, 2005. The state contends that absent any tolling, the statute of limitations would have expired on August 7, 2006. It notes that Monette did not file a direct appeal tolling the statute of limitations, and that he did not file a petition for habeas relief with the California Superior Court until August 18, 2006, after the statute of limitations expired on August 7, 2006. Thus, as of August 18, 2006, any federal habeas petition would already have been eleven days untimely because Monette had "used" all of the 365 days allotted for filing his federal habeas petition. *See Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). Accordingly, the state notes that under Ninth Circuit law, Monette's state habeas petitions

could not have "continuously tolled" the AEDPA limitations period during state habeas review because the limitations period had already passed. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"). Essentially, by filing his state petition after the expiration of the AEDPA's one-year limitations period, Monette foreclosed his opportunity to file a federal habeas petition altogether. *Id.*

Monette opposes the state's motion, arguing that the state is incorrect that AEDPA's statute of limitations began running on August 7, 2005, sixty days after Monette's judgment became final under § 2244(d)(1)(A). Instead, citing *Hasan v. Galaza*, 254 F.3d 1150, 1154-55 (9th Cir. 2001), he claims that § 2244(d)(1)(D) applies in this case because he could not have "discovered through the exercise of due diligence. . . the factual predicate of the claim or claims presented" until after the parole board's decision denying him parole became final on July 6, 2006. He argues that it was not until the parole board's decision became final that he could discover the prejudice resulting from his counsel's alleged incompetence.

In reply, the state argues that at the time he entered his plea, Monette had appeared before the parole board previously and had knowledge of the fact that the board would consider his conduct while in prison. It contends that it is therefore disingenuous for Monette to argue that he wasn't aware of the consequences of his no contest plea. The state notes that Monette himself concedes in a declaration filed with this court that he understood the plea might affect his life term. Accordingly, the state argues that under § 2244(d)(1)(D), Monette would have had knowledge of the factual predicate underlying the prejudice prong of his ineffective assistance of counsel plea at the time he entered the plea.

**C.   Analysis**

The court finds that Monette was aware of the factual predicate underlying both prongs of his ineffective assistance of counsel claim at the time that he entered his no contest plea. This case is distinguishable from the Ninth Circuit case relied on by Monette.

In *Hasan*, the petitioner and his trial counsel were aware, when the petitioner

5

1  was convicted in 1993 of attempted murder, that a prosecution witness in another case at
2  the same courthouse, Ms. Bernard, may have had inappropriate contact with one of the
3  jurors in petitioner's case, Mr. Harris.  254 F.3d at 1154.  Bernard had been seen
4  approaching Harris, asking him if he was on petitioner's jury, and handing Harris a piece of
5  paper stating, "Be sure to call me."  *Id.* at 1152.  Based on this suspicious conduct,
6  petitioner's trial counsel moved for a new trial, but he failed to interview all jurors to
7  investigate his suspicions, and also failed to seek a continuance to conduct such an
8  investigation. The trial court denied the motion for lack of better evidence of tampering.  *Id.*
9  at 1154.

10  Several years later, in December 1996, after petitioner's state appeals had ended,
11  the *Hasan* petitioner learned from a fellow inmate that Bernard had committed another,
12  related sort of tampering.  *Id.*   She had been romantically involved with one of the
13  prosecution witnesses in petitioner's case, Terrence Williamson, at the time of petitioner's
14  trial.  *Id.*  In April 1997, petitioner was able to obtain Williamson's affidavit admitting this
15  fact, a key foundation for petitioner's habeas claim that, had his trial counsel investigated
16  more effectively, counsel would have learned of the juror's affair with the prosecution
17  witness and, thus, could have succeeded on the motion for new trial.

18  The Ninth Circuit held that even a diligent petitioner could not reasonably have
19  discovered this hidden relationship sooner.  *Id.* at 1155.  Because it was a
20  newly-discovered factual predicate demonstrating the prejudice flowing from trial counsel's
21  ineffectiveness, the appellate court held that petitioner's AEDPA limitations period on the
22  witness-tampering claim did not begin to run until December 1996 at the earliest, thus
23  rendering petitioner's federal habeas petition timely.  *Id.*

24  Monette's situation, however, is not comparable to that of the petitioner in *Hasan*.  In
25  *Hasan*, the "factual predicate" of the petitioner's claim, the witness tampering was actively
26  concealed by the juror and the witness involved, and remained unknown to the petitioner
27  until he made a fortuitous discovery from another inmate while serving his sentence.  That
28

6

is not the case here.  Any resulting prejudice as a result of counsel's advice regarding the no contest plea was within Monette's knowledge at the time he entered the plea.  Monette was no stranger to the parole board process.  He may not have been able to predict the outcome of the future parole board proceedings, but he was certainly aware that his drug-related conviction may be considered in those proceedings.  Moreover, the court notes that Monette's argument is further undermined by the fact that the parole board's ultimate decision to deny parole rested primarily on the facts underlying his original commitment offense and his failure to admit responsibility - as opposed to the drug possession rules violation.

For all of the above reasons, the court concludes that Monette's federal habeas petition was filed 428 days late,[2] and GRANTS the state's motion to dismiss.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 28, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[2] This represents the time from August 7, 2006, when AEDPA's statute of limitations expired, until October 9, 2007, when Monette filed his federal petition with the Eastern District. Because the statute of limitations had already expired at the time that Monette filed his state habeas petition on August 18, 2006, the time during which the state habeas petitions were pending was not tolled. *Ferguson*, 321 F.3d at 823.